IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TAMMARA LYNN FIORI, ) | |
| ) | CASE NO. 5:14-CV-1159 |
| Plaintiff, ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| ) | KENNETH S. McHARGH |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | MEMORANDUM OPINION & |
| ) | ORDER |
| Defendant. ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 15). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Tammara Fiori's ("Plaintiff" or "Fiori") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. PROCEDURAL HISTORY

On April 13, 2011, Fiori filed an application for Disability Insurance benefits, alleging a period of disability beginning February 15, 2010. (Tr. 71, 189-90). Plaintiff claimed that she was disabled due to seizures, depression, fall risk and arthritis. (Tr. 212). The Social Security Administration denied her claims initially and upon reconsideration. (Tr. 71-105).

Plaintiff filed a request for a review before an administrative law judge ("ALJ"). (Tr. 122). ALJ James A. Hill convened an administrative hearing on November 21, 2012, to evaluate Plaintiff's applications. (Tr. 33-69). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Gene Burkhammer, also appeared and testified. (*Id.*).

On December 12, 2012, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 15-27). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id*.). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 1-6). The Appeals Council denied the request for review,

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

making the ALJ's December 12, 2012 determination the final decision of the Commissioner. (*Id.*).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on April 8, 1962, and was 47-years-old as of her alleged disability onset date and 50-years-old as of her hearing date. (Tr. 26, 39-40).  As a result, she was considered a "person closely approaching advanced age" as of the hearing date for Social Security purposes. 20 C.F.R. §§ 404.1563(d), 416.963(d).  Plaintiff lives with her husband, occasionally babysits her grandchildren, has a ninth grade education and has past relevant work experience as a café manager and cook. (Tr. 25, 40, 49-52, 578).

### B.  Medical Evidence

#### 1.  Physical Impairments

##### i.  Severe

Plaintiff was hospitalized for dizziness and ataxic secondary to Dilantin toxicity on November 14, 2010, with a medical history of seizures.  (Tr. 346-347).  A stroke workup was performed, including a CT and CTA of the brain, an echocardiogram, and an MRI/MRA of the brain, all with normal findings.  (Tr. 338-339, 346-347).  Records from a follow-up examination on December 27, 2010, documented Plaintiff as having a seizure disorder (Tr. 338-340).  Despite reports of a history of seizures in the record, including Plaintiff's self-reports, Plaintiff had no verifiable seizures during the year prior to July 2, 2010, and there is no record of any since that date.  (Tr. 338-340, 510, 513).  Plaintiff takes prescription medications for her seizures and underwent therapy for two weeks at a nursing facility for

her ataxia following the hospital stay, but discontinued therapy upon release from the nursing facility. (Tr. 338-39, 510).

Plaintiff had ongoing treatment records for complaints of pain. On March 19, 2010, Plaintiff presented to Dr. Sandra Beichler, with complaints of pain in her left buttock and tail bone. (Tr. 515). Examination revealed contusions on her left buttock, and no pain to palpitation on her spine or hip. (*Id*.) Following her fall on April 8, 2010, at which time Plaintiff complained of hurting everywhere, an x-ray demonstrated degenerative changes in Plaintiff's lumbosacral spine, and Plaintiff was diagnosed with exacerbation of chronic low back pain. (Tr. 408). Dr. Beichler's records documented right groin pain that radiates down Plaintiff's leg, for which Plaintiff was prescribed pain medication. (Tr. 14).

On October 27, 2010, Plaintiff presented at the emergency room with complaints of suffering right hip pain for 3 months, and hearing loss. (Tr. 405). Examination notes showed slightly limited motor strength secondary to pain, active range of motion in all extremities, with full range of motion in her right hip, but with complaints of pain, and mild tenderness in trochanter and groin area. (Tr. 405-06). X-ray at this time revealed "a little bit of arthritis and degenerative joint disease." (Tr. 406).

On November 2, 2010, Plaintiff returned to Dr. Beichler, with complaints of right groin and leg pain for a year. (Tr. 511). Plaintiff was again examined by Dr. Beichler on December 16, 2010. Examination records indicated that Plaintiff sometimes stumbled due to her right leg, and suffered from low back tenderness and pain that radiated down her right leg. (Tr. 510). Dr. Beichler's notes indicated Plaintiff's balance and walking abilities improved following two weeks in a nursing facility, but that Plaintiff still required a walker.

(Tr. 510).  On December 29, 2010, a lumbar spine MRI revealed mild degenerative disc disease. (Tr. 509).

Plaintiff again went to Dr. Beichler on January 18 and March 31, 2011, complaining of back pain.  (Tr. 506-07).  Notes from the January 18th appointment indicated Plaintiff got a job waiting tables but had to quit after one day.  (Tr. 507).  Records indicated that plaintiff had an ineffective epidural close in proximity to her March 31st appointment, and that she consistently contacted Dr. Beichler for pain medication prescriptions.  (Tr. 505-508).

Plaintiff saw Dr. Vincent Wake, an orthopedic surgeon, in early 2011 for back, inguinal, and leg pain.  (Tr. 526-28).  Dr. Wake's notes documented Plaintiff's complaints of pain, and showed minimal to normal findings on examination, specifically normal strength in her lower left extremity, strength at four out of five in her lower right extremity, normal sensation and reflexes, and negative straight leg raises.  (Tr. 527).  Plaintiff was diagnosed with lumbar degenerative disease and spondylosis, low back pain, and right lower extremity radiculitis (*Id.*). Additionally, Dr. Wake recommended a conservative care plan over surgery, including pain medication and physical therapy.  (*Id.*).  Records from a follow-up visit on March 17, 2011 showed similar findings, and Dr. Wake noted doubts that surgery would be effective.  (Tr. 557).  At this time Plaintiff was prescribed epidural steroid injections and muscle relaxants.  (*Id.*).  Similar findings were again documented for her April 28, 2011 examination, at which time Plaintiff told Dr. Wake she had undergone only one course of epidural steroid injections, which was not effective.  (Tr. 547).

On November 1, 2012, Plaintiff saw another orthopedic surgeon, Dr. Robert Erickson, II, for low back pain, including pain in her lower left extremity and numbness in both feet. (Tr. 674).  Dr. Erickson reviewed a lumbar spine x-ray performed September 9,

5

2012, and found lumbar or lumbrosacral degenerative disc, lumbar spondylolisthesis, and osteoarthritis hip, on Plaintiff's right side. (Tr. 677). Notes further included observation of a moderately antalgic gait, and mild to normal musculoskeletal findings on examination. (Tr. 676). Dr. Erickson prescribed Vicodin, and recommended an activity modification plan that included home exercise and a back corset. (Tr. 677).

      ii. Non-severe

The record shows Plaintiff has alcohol dependence in full, sustained remission. (Tr. 17). Plaintiff has been sober for 15 years following rehabilitation, with a relapse on April 8, 2010, at which point Plaintiff was treated for a fall down the stairs while intoxicated. (Tr. 407, 578). Although the April 8th doctor's notes stated Plaintiff drinks "on occasion," the record does not indicate significant relapses. (Tr. 407).

Plaintiff also has the following conditions: otitis media, degenerative changes of the left wrist, hypercholesterolemia/hyperlipidemia, and hypertension. (Tr. 17, 396). Diagnosed with hypertension in November 2014, records showed Plaintiff's blood pressure to consistently register at around, or less than, a systolic blood pressure of 144 mm/Hg, and a diastolic blood pressure at, or less than, 90 mm/Hg. (Tr. 340, 514, 645, 650, 654). A blood chemistry panel on March 9, 2007, showed hypercholesterolemia/hyperlipidemia, which was treated with medication. (Tr. 376-77). On November 8, 2012, Dr. Beichler noted her cholesterol to be "just a little high." (Tr. 647).

Medical records show Plaintiff was treated for degenerative changes of the left wrist, as well as otitis media and ataxia. (Tr. 18). Dr. Beichler diagnosed otitis media upon examination on November 2, 2010, and was again treated for a ringing in her ear in December 27, 2010. (Tr. 338, 511). Ataxia was reported in her medical records on

December 14, 2010, but attributed to Dilatin toxicity, and again on December 27, 2010, described as a "slight loss of balance." (Tr. 6-7, 347). An x-ray of Plaintiff's left wrist was performed on October 19, 2006, that showed moderate degenerative changes. (Tr. 487). A subsequent x-ray, performed on April 9, 2010, reported normal findings. (Tr. 468).

    2. Mental Impairments

Treatment records indicated Dr. Beichler, Plaintiff's primary care physician, continually prescribed antidepressant and anti-anxiety medication for Plaintiff from August 26, 2008 onward. (Tr. 516-522). Plaintiff underwent a psychiatric evaluation by psychiatrist Samina Zaidi on November 3, 2011, with self-reports of isolation, panic attacks and anxiety, progressing over six months. (Tr. 695-96). Evaluation notes indicated a history of alcoholism, now sober but with periodic relapse, and a history of sexual and physical abuse. (*Id.*). Plaintiff was diagnosed with post-traumatic stress disorder with depression, generalized anxiety disorder, dysthymia and alcohol abuse, with a GAF score of 40. (Tr. 698). Medications for these conditions were prescribed and continued. (*Id.*). The record indicates Plaintiff attended outpatient counseling between November 2011 and September 2012, with treatment records showing diagnoses of major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. (Tr. 702-705). Records indicated episodes of high anxiety and poor spirits, but no evidence of suicidality, homicidality, or psychosis, and that Plaintiff is generally cognitively intact. (*Id.*).

    3. Dr. Beichler's Opinion Evidence

Dr. Beichler submitted opinions as to Plaintiff's functional limitations based on her treatment of Plaintiff since 2008. Her opinion dated September 8, 2011, stated Plaintiff has environmental limitations such as to require avoidance of dust, hazards, and fumes, odors,

7

and chemical gases. (Tr. 595). According to this report, Plaintiff has no manipulative limitations, but can never climb or crouch, can occasionally balance, kneel, or stoop, and can frequently crawl. (Tr. 593-94). The report also indicated Plaintiff can lift up to 10 pounds, and can stand or walk 2 hours in an 8 hour workday, but requires a sit/stand option. (Tr. 592-93). Support for her opinion included statement that Plaintiff needs extended time to do laundry, that she can walk half-way around the block, and that her back pain frequently affects her daily living skills. (Tr. 593).

Dr. Beichler also submitted an opinion as to Plaintiff's mental limitations. (Tr. 585-87). Her opinion dated August 9, 2011, stated Plaintiff has marked limitations regarding interaction with co-workers, supervisors, and the public, including her ability to respond appropriately to usual work situations. (Tr. 585-86). Additionally, Dr. Beichler opined that Plaintiff has extreme limitations in her ability to make judgments on complex work-related decisions, marked limitations relating to complex instructions, and moderate limitations relating to simple instructions and work-related decisions. (Tr. 589). Dr. Beichler states in her assessment that Plaintiff is unable to work. (Tr. 591). Support for her opinion includes statements that Plaintiff would not interact with supervisors or co-workers, but would rather "just sit there or start crying," and that she would often have to go to the emergency room due to her panic disorder. (Tr. 586).

C. State Agency Evaluations and Opinion Evidence

Opinion evidence was submitted by state agency medical consultants Uma Gupta, M.D., and Diane Manos, M.D., based on examination of Plaintiff's medical records. (Tr. 84-86, 93-96). Both doctors determined Plaintiff could perform work at the light exertional level, could frequently climb ramps and stairs, kneel, could occasionally stoop, crouch and

crawl, and should avoid exposure to workplace hazards. (*Id*.). Neither Dr. Gupta nor Dr. Manos personally evaluated Plaintiff.

State agency medical consultants Caroline Lewin, Ph.D. and Cynthia Waggoner, Psy.D., submitted opinions as to Plaintiff's mental abilities, based on examination of Plaintiff's records. Dr. Lewin and Dr. Waggoner opined that Plaintiff could perform simple, routine tasks, with no production quotas, in a static work environment. (Tr. 83-84, 96-98). Further, Plaintiff should have no more than occasional contact with co-workers and supervisors. (*Id.*). Neither Dr. Lewin nor Dr. Waggoner personally evaluated Plaintiff.

Plaintiff underwent a state agency examination to determine her mental status on June 22, 2011, performed by Michael J. Harven, Ph.D. Dr. Harven interviewed Plaintiff and included a great deal of Plaintiff's own statements in his report. (Tr. 576-583). Examination notes indicated Plaintiff was adequately dressed and groomed, was cooperative, exhibited normal speech and logical thought process, but with low average intelligence, and received an overall GAF score of 50. (*Id.*). Plaintiff displayed moderate anxiety and depression, symptoms of which are related to childhood sexual abuse, with a full range of affect, and reported fleeting suicidal ideation with no plan. (*Id.*). Dr. Harven noted Plaintiff had very limited treatment for mental health issues, and does not have a need for a high level of mental health care. (Tr. 581-82).

In his functional assessment of Plaintiff, based on his June 22nd interview, Dr. Harven determined Plaintiff has mild to moderate limitations in memory that may cause some difficulty remembering in order to carry out job instructions. (Tr. 582). She exhibited a normal pace of performance and exhibited anxiety during her evaluation, and had difficulty focusing and performing basic arithmetic problems. (*Id.*). Dr. Harven opined

9

that she would have no difficulty responding appropriately to supervision and co-workers, but noted that she is driven by her posttraumatic stress disorder to avoid contact with the outside world, which she perceives as unsafe, and would likely have difficulty responding appropriately to work pressures. (Tr. 582-83).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act (the "Act") through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since February 15, 2010, the alleged onset date.

3. The claimant has the following severe impairments: seizure disorder, degenerative disc disease of the lumbar spine, with lumbar foraminal stenosis, degenerative changes of the right hip, post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except that the claimant cannot climb ladders, ropes or scaffolds and must avoid hazards such as dangerous machinery and unprotected heights. She cannot drive commercially. The claimant can occasionally balance, stoop, kneel, crouch and crawl. She can understand, remember and carry out simple instructions and perform simple, routine tasks. She requires a relatively static low stress workplace, without more than occasional changes in work setting or work processes and without strict quotas or fast-paced high production demands. The claimant is limited to infrequent superficial contact with the public and occasional, superficial contact with co-workers.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on April 8, 1962 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills in not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 15, 2010, through the date of this decision.

(Tr. 17-27) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." See 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. See *Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See *Kirk v. Sec'y of Health & Human Servs.*,

11

667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff seeks review from the Court based on the following allegations: (1) the ALJ erred in determining the Plaintiff's residual functional capacity by failing to assign controlling weight to the opinions of Plaintiff's treating physician, Dr. Beicher; (2) that a proper assignment of controlling weight to Dr. Beichler would have recognized a limitation to sedentary work, thereby resulting in a favorable decision pursuant to 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.10; (3) the ALJ erred by failing to consider Ms. Fiori's strong work history in his credibility finding; and (4) the ALJ erred in determining the Plaintiff's mental RFC by improperly discrediting a portion of the SSA's examining psychological expert's opinion.  Based on the following analysis, Plaintiff's arguments are not well-taken.

A. The ALJ properly adhered to the Treating Source Rule when he afforded "little weight" to the opinions of Plaintiff's treating physician.

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "Treating Source Rule" recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of the person's health and treatment history. *Id*; 20 C.F.R. § 416.927(c)(2). Opinions from such physicians are entitled to controlling weight only if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When determining that a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight is appropriate: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) any other factors which tend to support or contradict the opinion. *Id.* 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6). Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight. *See id.* (quoting S.S.R. 96-2p, 1996 WL 374188, at *5).

13

Plaintiff contends that the ALJ erred by assigning little weight to the opinion of her treating physician, Dr. Beichler, which she alleges is supported by evidence on the record. However, the ALJ conducted a thorough analysis and adhered to the Treating Source Rule, rendering Plaintiff's argument meritless. In the present case, the ALJ recognized Dr. Beichler as a treating source, and thoroughly summarized the medical evidence on the record, including Dr. Beichler's medical notes and opinions from at least as early as March 19, 2010. (Tr. 21-25). The ALJ additionally considered treatment records from other sources, including two orthopedic specialists and a pain management specialist, as well as medical records from emergency room visits. (Tr. 403-411, 523-524, 527, 674-677). Although Plaintiff points to a few medical records not cited by the ALJ, he is not required to specifically cite to all the medical evidence on the records, and the ALJ nonetheless cites to almost identical treatment records from the same doctors on different dates. (Tr. 22). The Plaintiff asserts evidence in support of her position, but does not point to any evidence that undercuts the ALJ's analysis, which considered the record in its entirety.

The ALJ provided a number of good reasons supporting his conclusion that Dr. Beichler's opinions as to Plaintiff's work limitations should be awarded only "little weight." Putting aside the appropriate rejection of Dr. Beichler's legal conclusion that Plaintiff was "unable to work" under S.S.R. 96-5p, 1996 WL 374183 (July 2, 1996), the ALJ points to specific evidence on the record that contradicts her opinion that Plaintiff required a sedentary level of exertion. (Tr. 24). First, the ALJ found the limitations inconsistent with objective diagnostic studies, including mild to normal findings from a lumbar spine MRI performed December 28, 2010, and right hip radiographs performed October 27, 2010. (Tr. 455, 461). The ALJ further found the limitations inconsistent with Plaintiff's rare and

14

conservative treatment for her hip and back ailments, which included prescription medication and an attempted epidural steroid injection, following physical examinations that "consistently, albeit not universally" reported minimal or normal findings in strength, sensation, reflexes and range of motion. (Tr. 232, 405-06, 461, 524, 527, 677). Finally, the ALJ supported his allocation of little weight to Dr. Beichler's opinions because he found Dr. Beichler "permitted the substitution of the claimant's judgment for her own, when she based her opinion to some extent on Plaintiff's self-reporting, pointing to her September 9, 2011 opinion that included, under medical and clinical findings, that Plaintiff needs to do laundry over an extended period of time, that back pain frequently affects her daily living skills, and that Plaintiff can only walk halfway around the block. (Tr. 24, 592-93). Despite Plaintiff's arguments to the contrary, the ALJ's reasons are supported by substantial evidence in the record and are sufficient to comply with the Treating Source Rule.

B. Plaintiff is not "disabled" as an individual "closely approaching advanced age" and limited to sedentary work.

Because the ALJ appropriately determined that Plaintiff is limited to light work, rather than sedentary work, as fully explained above, there is no basis for Plaintiff's contention that Plaintiff is entitled to a favorable decision under 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.10, which directs a finding of "disabled" for an individual "closely approaching advanced age" and limited to sedentary work.

C. The ALJ did not err by failing to consider Plaintiff's work history in his credibility finding.

Plaintiff provides an unfounded allegation that the ALJ erred by failing to consider Plaintiff's work history in his credibility assessment. "An ALJ is not required to accept a

15

claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525 (6th Cir. 1997)). The ALJ's findings based on his determination of credibility shall be accorded great weight. *Walters*, 127 F.3d at 531. The ALJ's assessment of credibility must be supported by substantial evidence. *Id.* To determine credibility, the ALJ must consider the entire case record. S.S.R. 96–7p, 1996 WL 374186, at *1 (July 2, 1996). The ALJ's credibility determination must include clear reasons for the finding, and state specific reasons, from evidence in the case record, for the assigned credibility weight. S.S.R. 96–7p, at *2; *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994).

When evaluating symptoms, the ALJ shall consider information about the individual's prior work record, statements about his symptoms, evidence submitted by treating and non-treating sources, as well as observations by other individuals. 20 C.F.R. § 404.1529(c)(3). Further, in assessing credibility, the ALJ must consider factors including the degree to which the individual's statements are consistent with the medical findings, the individual's prior statements to the agency, and other information in the case record, as consistency is a strong indicator of credibility. S.S.R. 96–7p, at *5. *Fitzpatrick v. Comm'r of Soc. Sec.*, No. 3:12-CV-1345, 2013 WL 3480372, at *6-7 (N.D. Ohio July 10, 2013).

Here, the ALJ's credibility evaluation provides sufficiently specific reasons for finding information given by Plaintiff as not wholly reliable. Looking at the record in its entirety, the ALJ found Plaintiff's allegations of physical and mental limitations were not consistent with medical evidence and her reported abilities to conduct daily activities. (Tr. 23-24). The ALJ also pointed to contradictory evidence and statements on central issues of

Plaintiff's claim, including (1) inconsistent testimony as to Plaintiff's ability to leave her home unaccompanied, (2) evidence of a lengthy employment history in skilled and managerial positions despite Plaintiff's testimony that she could not read or write well, or manage her own finances, and (3) conflicting reports of pain.  (Tr. 24).

Plaintiff makes no objections to the ALJ's credibility analysis beyond her assertion that he improperly failed to consider Plaintiff's "strong work history" in his analysis.  This assertion is incorrect, as the ALJ points out in his credibility analysis that the "record indicates that the claimant had lengthy employment in skilled positions." (Tr. 24).  Beyond this, it is not necessary that an ALJ discuss every single factor in 20 C.F.R. 404.1529.  See *Fitzpatrick*, 2013 WL 3480372 at *8 (ALJ need not discuss every factor where a robust discussion of factors supports the ALJ's credibility determination). Accordingly, Plaintiff's argument that the ALJ erred by failing to consider Plaintiff's work history in his assessment of Plaintiff's credibility is without merit.

    D.    The ALJ properly discredited a portion of the opinion of the SSA's examining psychological expert, and his mental RFC determination is supported by substantial evidence.

To determine a claimant's RFC, the ALJ has the authority to weight the evidence, including medical opinions considered together with the rest of the evidence, as he deems appropriate.  20 C.F.R. 404.1527(b)-(c), (e).  When evaluating opinions from non-treating medical sources, an ALJ must consider the supportability and consistency of the opinion, the specialization of the medical source, and any other factors that tend to support or contradict the opinion.  20 C.F.R. 404.1527(c).  The amount of weight given to a non-

treating source depends on the degree of relevant evidence and explanations in support of his opinion. 20 C.F.R. 404.1527(c).

Plaintiff's argument that the ALJ erred by discrediting the portion of Dr. Harvan's opinion concerning her ability to withstand stress is unsubstantiated.  The ALJ provided good reasons, supported by substantial evidence, for his allocation of considerable weight to the opinion of Dr. Harvan.  Plaintiff's RFC largely encompasses the limitations expressed by Dr. Harvan's opinion, including a requirement for a "relatively static low stress workplace, without more than occasional changes in work settings…." (Tr. 20, 25).  So far as the RFC is inconsistent with Dr. Harvan's work stress limitations, the ALJ reasons that Dr. Harvan only examined the Plaintiff on a single occasion, and that his work stress opinion derived from Plaintiff's own statements, rather than observed behavior.  (Tr. 25, 583).  This rationale is supported by Dr. Harvan's report, which included a great deal of self-reporting by the Plaintiff, and shows he based his work stress opinion entirely on Plaintiff's noted attempts to remain in her home and isolate herself from the outside world, due to her post traumatic stress disorder.  (Tr. 583).  No objective evidence or direct observations are offered in support of this portion of his opinion.  (*Id.*).

Plaintiff's arguments do not support her assertion that the ALJ erred in his analysis of Dr. Harvan's opinion or his overall determination of Plaintiff's RFC.  Plaintiff first points to the opinion of Dr. Beichler, which was discredited by the ALJ, and thus provides meager support for her claim.  Beyond that, Plaintiff neglects to specify anything in the medical opinions that would conclusively undermine the ALJ's analysis of Dr. Harven's opinion, or the work stress limitation of the RFC.  Additionally, despite a lengthy summary in her brief, Plaintiff does not point to any additional evidence in support of her argument that was not

18

considered by the ALJ in his analysis. Much of the evidence presented in support of Plaintiff's argument, such as problems with memory and an inability to follow directions and do simple arithmetic, has little to no significance as to her ability to withstand work stress. The ALJ properly weighed the evidence, including the opinion of Dr. Harvan, in formulating Plaintiff's RFC, which is supported by substantial evidence. Accordingly, Plaintiff's argument is rejected.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

<u>s/ Kenneth S. McHargh</u>
Kenneth S. McHargh
United States Magistrate Judge

Date: <u>September 16, 2015</u>